IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| G.Y.J.P., A MINOR CHILD, by and through her mother and Next Friend, M.R.P.S.,<br><br>*Plaintiff*,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary of Homeland Security, in his official capacity, et al.,<br><br>*Defendants*. | No. 20-cv-01511-TNM |

**REPLY IN SUPPORT OF MOTION FOR SCHEDULING ORDER ON FORTHCOMING MOTION FOR SUMMARY JUDGMENT**

Plaintiff briefly responds to Defendants' opposition to her Motion for Scheduling Order. None of Defendants' arguments is persuasive.

First, Defendants say that Plaintiff has not sufficiently identified "which specific criteria she thinks her case shares with *J.B.B.C.*" ECF No. 28 at 4. Yet as Plaintiff has already explained (and Defendants do not squarely dispute), the two cases raise the *exact same* legal challenges against the Title 42 Process against the *exact same* Defendants, and rely on the same legal arguments attacking the legality of Defendants' use of the Title 42 public health laws to create a parallel deportation process. ECF Nos. 7, 8, 12. Even a cursory review of the complaints in the two cases shows that they "involve common issues of law and fact." LCvR 40.5(a)(3). Indeed, the two cases are nearly identical in all relevant respects. *See* First Amended Complaint, *J.B.B.C. v. Wolf*, No. 20-cv-01509-CJN (July 2, 2020), ECF No. 42. Moreover, Judge Nichols has already spent substantial time addressing these legal questions, and has reviewed extensive briefing and evidence concerning the Title 42 Process. Judge Nichols held

1

two hearings and heard lengthy oral argument before issuing his ruling.  And as noted, Plaintiffs' counsel in the two cases overlap heavily, and have the same lead counsel.  Consequently, the identity of issues and the expenditure of significant judicial resources in *J.B.B.C.* weigh heavily in favor of transfer.

Second, Defendants oppose relation of this case on the ground that they contend the cases pending in front of Judge Nichols are moot.  ECF No. 28 at 4.  The plaintiffs before Judge Nichols, J.B.B.C. and E.Y., dispute mootness, particularly because Defendants acted *voluntarily* to put them in ORR custody (seemingly as a litigation tactic).  Defendants bear a "heavy burden" to show that their voluntary cessation of allegedly unlawful conduct moots the cases, and they have not met that burden.  *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017).  Defendants have done nothing to make it "'absolutely clear' that it could not revert to its" earlier plan to subject both J.B.B.C. and E.Y. to the Title 42 Process, without an asylum hearing in regular removal proceedings before an immigration judge.  *Id.*

Regardless of the merits of Defendants' mootness arguments, the critical point for related-case purposes is that the case before Judge Nichols remains "pending on the merits." LCvR 40.5(a)(3).  Far from the question of mootness having been settled, Defendants concede they have not even filed a motion to dismiss before Judge Nichols.  ECF No. 28 at 4.  *Cf. Collins v. Pension Ben. Guar. Corp.*, 126 F.R.D. 3, 7 (D.D.C. 1989) (case remained "pending on the merits" when there was no dismissal order).  That Defendants' objection to relation depends on the assertion that *J.B.B.C.* is moot only underscores why this case should be related to *J.B.B.C.*, since Judge Nichols should address Defendants' mootness arguments in the first instance.

Third, the procedural histories of *J.B.B.C.* and *G.Y.J.P.* demonstrate that Defendants are trying to game this District's relation rules by strategically pulling a child out of the Title 42

2

expulsion process when they believe the child's case would be brought before Judge Nichols, thereby delaying any resolution of the legality of the novel Title 42 Process. Defendants vigorously contested J.B.B.C.'s TRO Motion for weeks, and Judge Nichols held two hearings. During that time, Defendants never suggested that taking J.B.B.C. out of the Title 42 Process was an option. In fact, on June 9, 2020, J.B.B.C.'s immigration counsel requested that J.B.B.C. be transferred to ORR care, and DHS refused. *See* Suppl. Corchado Decl. ¶ 3, *J.B.B.C. v. Wolf*, No. 20-cv-01509-CJN (June 22, 2020), ECF No. 34-3. On June 24, Judge Nichols, after extensive briefing and argument, issued a preliminary injunction enjoining J.B.B.C.'s removal pending summary judgment. Judge Nichols then asked the parties to submit expedited summary judgment briefing schedules by June 29, but the day before the schedules were due, Defendants abruptly changed course and voluntarily transferred J.B.B.C. to ORR custody.

Additionally, on July 2, Plaintiffs' counsel in *J.B.B.C.* added another child to the case, named E.Y. That child had been in the Title 42 Process for days and was set to be deported. Mere hours after Plaintiffs added E.Y. to the case, Defendants informed Plaintiffs' counsel that they were taking E.Y. out of the Title 42 Process and sending him to ORR custody. Since Judge Nichols's order, and apart from J.B.B.C. and E.Y., Plaintiffs' counsel has brought eight other children to Defendants' attention. Except for one child who was already deported by the time Plaintiff wrote Defendants, they have voluntarily taken each child out of the Title 42 Process.

Defendants' strategy is clear—they are attempting to "moot" the case of every child who has been or could be added as a plaintiff in the case pending in front of Judge Nichols, with the goal of avoiding a speedy resolution of this issue by a judge who has already familiarized himself with the issues and preliminarily ruled against the government. Judicial efficiency is promoted by relating these cases before a judge who has already expended significant time

3

analyzing the issues, not by having this Court begin the process anew. *See Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157 (D.D.C. 2002) (deeming cases related where "[i]t would waste judicial resources and be nonsensical" to have cases proceed separately given judicial resources already expended in one case).

Fourth, assuming G.Y.J.P.'s case is not related before Judge Nichols to *J.B.B.C.*, Defendants argue there is no basis to set her case on an expedited schedule, because Plaintiff filed her motion approximately four weeks after the case was filed. ECF No. 28 at 2. But that ignores that, until Defendants' change in litigation tactics, *J.B.B.C.* was on track to quickly resolve the merits of the same legal claims also brought here. Plaintiffs' counsel had every reason to believe the cases would be related before Judge Nichols and that the resolution of the legal issues in *J.B.B.C.* would apply equally to this case. During this time, the parties were also engaged in extensive preliminary injunction practice before Judge Nichols on a fast schedule.[1]

Moreover, an expedited schedule is appropriate here because the parties were negotiating a fast summary judgment schedule in *J.B.B.C.* before Defendants voluntarily ceased their unlawful treatment of that child. Given that identical legal issues are raised in G.Y.J.P.'s case, and that Defendants were already prepared to litigate those issues on an expedited basis, Defendants should not require substantial additional time to prepare their briefing here. Indeed, when asked by Judge Nichols how soon they could prepare the administrative record, government counsel informed him that it could be done by July 10, and that they were prepared to move quickly on summary judgment.

---

[1] Defendants also note that they were formally served in this case on June 30. ECF No. 28 at 2. But Defendants' counsel were well aware of this case before they were formally served, and were actively engaged in litigation on the identical issues in *J.B.B.C.* *See* Related Case Notice, *J.B.B.C. v. Wolf*, No. 20-cv-01509-CJN (June 15, 2020), ECF No. 21.

4

Nor, finally, is there any basis to Defendants' implication that G.Y.J.P. does not require urgent injunctive relief. ECF No. 28 at 2. G.Y.J.P. remains in hiding because she fears that gang members will find and harm her. G.Y.J.P. Decl., ¶¶ 49-50. Expedited summary judgment proceedings would be the most efficient way for her to obtain meaningful relief, including a permanent injunction permitting her return to this country. *See* Complaint, Prayer for Relief. If an expedited summary judgment schedule is not granted, Plaintiff anticipates seeking a preliminary injunction.

Dated: July 19, 2020                                                          Respectfully submitted,

/s/Celso J. Perez

Stephen B. Kang**  
Cody Wofsy**  
Morgan Russell**  
Adrienne Harrold**  
American Civil Liberties Union Foundation, Immigrants' Rights Project  
39 Drumm Street  
San Francisco, CA 94111  
Tel: (415) 343-0770

Andre Segura  
Kathryn Huddleston  
Rochelle Garza  
Brantley Shaw Drake  
American Civil Liberties Union Foundation of Texas, Inc.  
5225 Katy Freeway, Suite 350  
Houston, Texas 77007  
Tel. (713) 942-8146

Jamie Crook (D.C. Bar No. 1002504)  
Blaine Bookey  
Karen Musalo  
Center for Gender & Refugee Studies  
200 McAllister St.  
San Francisco, CA 94102

Lee Gelernt**  
Daniel A. Galindo**  
Celso J. Perez (D.C. Bar No. 1034959)  
American Civil Liberties Union Foundation, Immigrants' Rights Project  
125 Broad Street, 18th Floor  
New York, NY 10004  
Tel: (212) 549-2600

Robert Silverman***  
Oxfam America  
Boston, MA 02115, Suite 500  
Tel: (617) 482-1211

Karla M. Vargas*  
Efren C. Olivares*  
Texas Civil Rights Project  
1017 W. Hackberry Ave.  
Alamo, Texas 78516  
Tel: (956) 787-8171

Scott Michelman (D.C. Bar No. 1006945)  
Arthur B. Spitzer (D.C. Bar No. 235960)

Tel: (415) 565-4877

American Civil Liberties Union Foundation of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
Tel: (202) 457-0800

*Attorneys for Plaintiff*
*\*Admitted pro hac vice*
*\*\*Pro hac vice application pending*
*\*\*\*Pro hac vice application forthcoming*