# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| G.Y.J.P., a MINOR CHILD, by and through her mother and Next Friend, M.R.P.S.,<br><br>        Plaintiff,<br><br>    v.<br><br>CHAD WOLF, Acting Secretary of Department of Homeland Security, et al.,<br><br>        Defendants. | Civil Docket No. 1:20-cv-01511 (TNM) |

# REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
# FOR LACK OF JURISDICTION

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.    Plaintiff Cannot Show That She Has Standing to Sue, Because Her Alleged Injury
is not Redressable ......................................................................................................... 1

    A.    The APA Does Not Authorize the Court to Order the Relief Plaintiff
Seeks. ................................................................................................................ 1

    B.    The Court Lacks Equitable Power to Order the Government to Bring
Plaintiff to the United States ........................................................................... 4

    C.    Ordering the Government to Return Plaintiff to the United States Would
Violate Separation-of-Powers Principles. ....................................................... 7

II.    Even if This Court Has the Power to Provide Plaintiff's Requested Relief, the
Court Should Refrain from Ordering the Government to Bring Plaintiff to the
United States ................................................................................................................ 11

III.    Without an Order Requiring the Government to Return Plaintiff to the United
States, Plaintiff's Other Requested Relief Would not Redress Her Alleged
Injuries. ....................................................................................................................... 12

CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Am. Petroleum Tankers Parent, LLC v. United States*,
    943 F. Supp. 2d 59 (D.D.C. 2013) ....................................................... 12

*Aracely, R. v. Nielsen*,
    319 F. Supp. 3d 110 (D.D.C. 2018) ....................................................... 3

*Associated Builders & Contractors, Inc. v. Reich*,
    978 F. Supp. 338 (D.D.C. 1997) ....................................................... 2, 3

*Bonilla v. United States*,
    653 F. Supp. 749 (D.D.C. 1987) ....................................................... 3

*Boumediene v. Bush*,
    553 U.S. 723 (2008) ....................................................... 9

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ....................................................... 13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ....................................................... 1, 10

*Cnty. of Los Angeles v. Shalala*,
    192 F.3d 1005 (D.C. Cir. 1999) ....................................................... 2, 3

*Cobell v. Norton*,
    240 F.3d 1081 (D.C. Cir. 2001) ....................................................... 7

*Dep't of Navy v. Egan*,
    484 U.S. 518 (1988) ....................................................... 8

*Fogo De Chao (Holdings) Inc. v. DHS*,
    769 F.3d 1127 (D.C. Cir. 2014) ....................................................... 2

*Grace v. Whitaker*,
    344 F. Supp. 3d 96 (D.D.C. 2018), *aff'd in part, vacated in part, rev'd in part on other
    grounds sub nom. Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020). ....................................................... 3, 6

*\*Grupo Mexicano de Desarrallo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999) ....................................................... 4, 5

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) ....................................................... 8

*J.L. v. Cuccinelli,*
No. 18-CV-04914-NC, 2020 WL 2562895 (N.D. Cal. Feb. 20, 2020) ..................................... 7

*Kashannejad v. U.S. Citizenship & Immigration Servs.,*
No. C-11-2228 EMC, 2011 WL 4948575 (N.D. Cal. Oct. 18, 2011)........................................ 3

*Kiyemba v. Obama,*
555 F.3d 1022 (D.C. Cir. 2009), *vacated* 559 U.S. 131, *and judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010) ................................................................. 5, 6, 8, 9

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)........................................................................................................ 8, 10, 12

*Marbury v. Madison,*
5 U.S. (1 Cranch) 137 (1803)..................................................................................................... 10

*Ne. Hosp. Corp. v. Sebelius,*
699 F. Supp. 2d 81 (D.D.C. 2010) ............................................................................................... 2

*\*Palisades Gen. Hosp., Inc. v. Leavitt,*
426 F.3d 400 (D.C. Cir. 2005) ................................................................................................. 2, 3

*Raines v. Byrd,*
521 U.S. 811 (1997)..................................................................................................................... 1

*Ramirez v. U.S. Immigration & Customs Enforcement,*
310 F. Supp. 3d 7 (D.D.C. 2018) ............................................................................................... 4

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998)....................................................................................................................... 8

*Trump v. Hawaii,*
138 S. Ct. 2392 (2018)................................................................................................................. 8

*United States v. Mitchell,*
463 U.S. 206 (1983)..................................................................................................................... 7

*Vogel v. Go Daddy Grp., Inc.,*
266 F. Supp. 3d 234 (D.D.C. 2017) ............................................................................................ 8

*Walters v. Reno,*
145 F.3d 1032 (9th Cir. 1998) .................................................................................................... 6

*Wilkie v. Robbins,*
551 U.S. 537 (2007)..................................................................................................................... 5

**Statutes**

5 U.S.C. § 702......................................................................................................................... 2

5 U.S.C. § 703......................................................................................................................... 2

**Other Authorities**

2 J. Story, Commentaries on Equity Jurisprudence (2d ed. 1839)................................................. 5

USCIS, Facilitating the Return to the United States of Certain Lawfully Removed Aliens,
    https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_
    return.pdf................................................................................................................... 9, 10

## INTRODUCTION

Defendants respectfully ask the Court to dismiss this case for lack of jurisdiction because Plaintiff cannot meet her burden to establish Article III standing.  In her Complaint, Plaintiff asks that the Court "provid[e] relief" by "ordering that Defendants return her [from El Salvador] for reprocessing of her application for admission" to the United States.  Compl., Prayer for Relief ¶ c, ECF No. 3.  That aspect of Plaintiff's requested remedy is crucial because Plaintiff's presence in the United States is necessary for her to avail herself of the procedural protections of the immigration laws to which she claims she is entitled.  That is, even if Plaintiff prevails in her challenge to the Order issued by the Centers for Disease Control and Prevention ("CDC") on the merits, the Court cannot redress Plaintiff's injuries unless it also orders that the Government "return" her to the United States.  Such an order, however, would be beyond the Court's legal or equitable powers and, even more, would raise serious separation-of-powers concerns.  The Court should therefore dismiss Plaintiff's case.

## ARGUMENT

I.   **PLAINTIFF CANNOT SHOW THAT SHE HAS STANDING TO SUE, BECAUSE HER ALLEGED INJURY IS NOT REDRESSABLE**

A.   **The APA Does Not Authorize the Court to Order the Relief Plaintiff Seeks.**

As Defendants explained in their opening brief, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013), and one element of that limitation is that Plaintiff must establish standing, *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Because relaxation of those "requirements is directly related to the expansion of judicial power," *Clapper*, 568 U.S. at 408-09 (citation omitted), the Supreme Court has "always insisted on strict compliance with th[e] jurisdictional standing requirement," *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Here, Plaintiff cannot meet her burden to establish standing, because this Court lacks the power to order the Government to return Plaintiff from El

Salvador to the United States, which is necessary to provide Plaintiff with any effective relief from her alleged injuries.

As Defendants explained in their opening brief, under well-established principles of administrative law, a "district court ha[s] no jurisdiction to order specific relief" in an APA case. *Palisades Gen. Hosp.*, *Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005); *see also* Defs.' Mot. to Dismiss for Lack of Jurisdiction ("Mem.") at 9–11, ECF No. 38. "[W]hen a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *Palisades Gen Hosp.*, 426 F.3d at 403 (quoting *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1001 (D.C. Cir. 1999)) (internal quotation marks omitted); *see also Fogo De Chao (Holdings) Inc. v. DHS*, 769 F.3d 1127, 1139 (D.C. Cir. 2014) (applying the "ordinary remand" rule in the immigration context, "consistent with [the court's] limited role in reviewing agency action"). Applying the only appropriate remedy of remand here, however, would not provide Plaintiff with the relief she seeks because Plaintiff resides in El Salvador and is not an applicant for admission to the United States. There would therefore be no further action for the agency to take, even if the Court were to agree with Plaintiff on the merits of her claims. Plaintiff's alleged injuries would be redressable only if the Court ordered the Government to bring Plaintiff from El Salvador to the United States for processing—but that is precisely the type of "specific remedy" that is unavailable under the APA. *See, e.g.*, *Ne. Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 95-96 (D.D.C. 2010) (rejecting the plaintiffs' request to direct the agency "to count labor and delivery room days in both the numerator and denominator of the Medicaid fraction," explaining that "it would be error to do anything more" than vacate the agency's decision).

Plaintiff attempts to avoid a straightforward application of binding D.C. Circuit precedent by pointing out that the APA "*explicitly* provides for the issuance of both prohibitory and mandatory injunctions against government agencies and officers." Pl.'s Opp'n to Defs.' Mot. to Dismiss for Lack of Jurisdiction ("Opp'n") at 20, ECF No. 40 (citing 5 U.S.C. §§ 702, 703). The APA, of course, authorizes courts to enjoin unlawful agency activity. *See, e.g.*, *Associated*

2

*Builders & Contractors, Inc. v. Reich*, 978 F. Supp. 338, 340 (D.D.C. 1997) ("[W]hen an agency action is inconsistent with statutory authority or with the agency's own valid regulations, courts have exercised their jurisdiction to enjoin the agency action.").  But it is one thing to enjoin an agency or an agency official from carrying out a policy that the court has concluded is unlawful. And it is quite another for a court to fashion a specific remedy that requires the Government to take the extraordinary step of going beyond its borders to "return" Plaintiff to the United States. The APA does not give the Court the power to provide Plaintiff such tailor-made relief.  *See, e.g.*, *Palisades Gen Hosp.*, 426 F.3d at 403; *Cnty. of Los Angeles*, 192 F. 3d at 1011.

As for the proposition that "courts in APA actions regularly enter mandatory injunctions against government agencies as needed to redress violations of law," Opp'n at 20–21, none of the cases Plaintiff cites in support indicates that the APA itself allows courts to fashion specific relief in order to make the plaintiffs whole.  In *Grace v. Whitaker*, for example, the district court incorrectly assumed that it possessed some form of equitable authority to require the Government to return aliens to the United States because the plaintiffs "availed themselves of the 'framework' under which aliens may enter the United States."  344 F. Supp. 3d 96, 144–45 (D.D.C. 2018), *aff'd in part, vacated in part, rev'd in part on other grounds sub nom. Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020).  The court never stated that the APA authorized such relief, let alone explained how that would be so.  *See id.* at 144–46.  Similarly, in *Kashannejad v. U.S. Citizenship & Immigration Servs.*, No. C-11-2228 EMC, 2011 WL 4948575 (N.D. Cal. Oct. 18, 2011), the court did not explain the basis for ordering specific relief, and nothing in that decision (even if correct) suggests that the power to do so flows from the APA.  *See id.* at *6, *11.  In Plaintiff's other cited cases, the courts explicitly exercised their *equitable* powers, rather than the APA, to provide a specific remedy.  *See, e.g.*, *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 126 (D.D.C. 2018) ("Because Plaintiffs seek to alter—not preserve—the status quo, the Court will exercise extreme caution in assessing Plaintiffs' invitation to invoke the court's extraordinary equitable powers."); *Bonilla v. United States*, 653 F. Supp. 749, 757 (D.D.C. 1987) ("As a court of equity, I have the authority to directly order that the plaintiff be tenured.").

3

Plaintiff also points to *Ramirez v. U.S. Immigration & Customs Enforcement*, 310 F. Supp. 3d 7 (D.D.C. 2018), asserting that "the court entered a mandatory injunction to remedy a violation of the Trafficking Victims Protection Reauthorization Act," Opp'n at 21, a statute Plaintiff seeks to invoke in this case.  Yet, in that case, the court concluded that the Government had not satisfied a statutory requirement to "consider" placing the plaintiffs in the "least restrictive setting" available during the plaintiffs' detention.  *Ramirez*, 310 F. Supp. 3d at 28–31.  And as a remedy, the court effectively remanded to the agency, ordering only that the agency conduct the required statutory analysis consistent with the court's findings.  *See id.* at 34.  Accordingly, *Ramirez* actually supports Defendants' position that no specific remedy is available under the APA.

Because the APA does not empower the Court to award Plaintiff the specific remedy of an order requiring the Government to bring her to the United States, Plaintiff's injury is not redressable by this Court, and this action should be dismissed.  *See* Mem. at 9–11.

**B.**     **The Court Lacks Equitable Power to Order the Government to Bring Plaintiff to the United States**

Plaintiff also fails to show that the Court has equitable power to order the Government to return Plaintiff from El Salvador to the United States.  It is well-established that federal courts' jurisdiction in equity is the same jurisdiction that was exercised by the High Court of Chancery in England in 1789.  *See Grupo Mexicano de Desarrallo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999).  Thus, when evaluating the limits of their equitable powers, courts must look to whether the contemplated remedy "was traditionally accorded by courts of equity."  *Id.* at 319.

The Supreme Court's analysis in *Grupo Mexicano* is illustrative and requires dismissal of Plaintiff's claims.  There, the Court concluded that the district court lacked authority to issue "a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed" because "the relief sought . . . does not have a basis in the traditional powers of equity courts."  *Grupo Mexicano*, 527 U.S. at 327.  So too in this case.  Defendants are unaware of any authority supporting the assertion that courts in equity traditionally could require

4

the sovereign to bring a noncitizen from another country to its borders to apply for admission, and Plaintiff provides none in her opposition.

Rather, Plaintiff is forced to rely on treatises and cases that stand for the proposition that courts have authority, as a general matter, to provide broad remedies. *See* Opp'n at 14 & n.7.  For example, Plaintiff cites Joseph Story's 1839 Commentaries on Equity Jurisprudence, which states that litigants may seek relief for "restorative" purposes, and that "[a]n injunction . . . is a writ framed according to the case." *Id.* (citing 2 J. Story, Commentaries on Equity Jurisprudence § 862, p. 155 (2d ed. 1839); *id.* § 861 n.1, p. 155).  Defendants do not dispute that courts have considerable discretion to fashion remedies as a general matter.  When courts are sitting in equity, however, those powers must still be rooted in traditional equity principles. *See Grupo Mexicano*, 527 U.S. at 322 ("We do not question the proposition that equity is flexible; but in the federal system, at least, that flexibility is confined within the broad boundaries of traditional equitable relief.").  At bottom, Plaintiff's argument is that a remedy surely must exist whenever there is an alleged wrong.  But that is not the law. *See Kiyemba v. Obama*, 555 F.3d 1022, 1027 (D.C. Cir. 2009) ("We do not believe the maxim ["where there is a right, there is a remedy"] reflects federal statutory or constitutional law." (citing *Wilkie v. Robbins*, 551 U.S. 537 (2007))), *vacated* 559 U.S. 131 (2010), *and judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010).

Indeed, if Plaintiffs were correct that courts could fashion any remedy to rectify an alleged wrong, the D.C. Circuit would have reached a different result in *Kiyemba*, which addressed a district court order that the Government bring Chinese citizens to the United States and release them in the country. *See id.* at 1023.  Starting with the principle that "a nation-state has the inherent right to exclude or admit foreigners and to prescribe applicable terms and conditions for their exclusion or admission," the D.C. Circuit explained that "[t]he Judiciary only possesses the power Congress gives it," and the "critical question" is "what law 'expressly authorized' the district court to set aside the decision of the Executive Branch and to order [the] aliens brought to the United States and released in Washington, D.C.[.]" *Id.* at 1025-26 & 1028 n.12.  Finding no such law, the D.C. Circuit concluded that the district court lacked the power to issue the order. *See id. at* 1029,

1032.  The same is true here.  Without any traditional equitable power to compel the Government to bring an alien within its borders, and absent any specific legislative authorization for such a remedy, the Court is not empowered to provide Plaintiff with the relief she seeks.

Plaintiff attempts to distinguish *Kiyemba* on the basis of *dicta*, pointing out that the Chinese citizens in that case were seeking relief through habeas petitions "*outside the framework of [U.S.] immigration laws*."  Opp'n at 17 (quoting *Kiyemba*, 555 F.3d at 1028 (Plaintiff's emphasis and alteration)).  But Plaintiff ignores the fundamental holding in *Kiyemba*, which is that there must be some basis in either traditional equity or law that authorizes a specific remedy before it can issue.  *See* 555 F.3d at 1028 ("And so we ask again: what law authorized the district court to bring petitioners to the United States and release them here?").  It is not enough, as Plaintiff claims, and as the court incorrectly concluded in *Grace*, 344 F. Supp. 3d at 145, that an alien merely avail herself of the U.S. immigration process, *see* Opp'n at 17, because there is no law "expressly authoriz[ing]" the Court to order the Government to bring aliens from another country to the United States for immigration processing, *see Kiyemba*, 555 F.3d at 1026.  *See also* Mem. at 14–15.

Plaintiff asserts that courts purportedly "have routinely ordered the government to facilitate the return of unlawfully deported noncitizens."  Opp'n at 1, 9–13.  Defendants acknowledge, as they did in their opening brief, that some courts have required the Government to take steps to facilitate noncitizens' return to the United States.  *See* Mem. at 14–15.  But Plaintiff's authorities do not establish that the Court has the power to force the government to bring her to the United States from El Salvador.  Notably, all but one of the cases Plaintiff cites are outside of this Circuit, and therefore not subject to the D.C. Circuit's holding in *Kiyemba*.  And to the degree the courts in those cases did provide similar relief to what Plaintiff requests here, they did not address the specific question whether traditional equity principles grant them such power.  *See, e.g.*, *Grace*, 344 F. Supp. 3d at 145 (incorrectly assuming that the court possessed some form of equitable authority to require the Government to return an alien to the United States); *Walters v. Reno*, 145 F.3d 1032, 1050 (9th Cir. 1998) (concluding that equitable relief is warranted to address the

deprivation of a constitutional right); *cf. J.L. v. Cuccinelli*, No. 18-CV-04914-NC, 2020 WL 2562895, at *3 (N.D. Cal. Feb. 20, 2020) (court exercising its contempt power to require defendants to facilitate the return of certain plaintiffs to the United States as a sanction for violating the court's injunction prohibiting those plaintiffs from being removed from the country in the first place).

Plaintiff also cites *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001), to argue that "courts are presumed to possess the full range of remedial powers—legal as well as equitable—unless Congress has expressly restricted their exercise." Opp'n at 13 (quoting *Cobell*, 240 F.3d at 1108). That case is inapposite. *Cobell* was a class-action suit brought by Native American beneficiaries of a trust established by the United States. The beneficiary plaintiffs alleged that the Government breached its fiduciary duties owed to them by mismanaging the trust accounts. *See Cobell*, 240 F.3d at 1092–93. In addressing whether the district court had the power to compel the Government to "ensure the provision of a complete historical accounting" of the trust's assets, the D.C. Circuit explained that "[f]ederal courts have repeatedly recognized the right of Native Americans to seek relief for breaches of fiduciary obligations," and "[i]t is fundamental that an action for accounting is an equitable claim and that courts of equity have original jurisdiction to compel an accounting." *Id.* at 1107–08; *see also id.* (noting that "the Supreme Court (and the federal government) [have] simply assumed that Indian beneficiaries could pursue equitable relief against the government of its breach of fiduciary duties" (citing *United States v. Mitchell*, 463 U.S. 206, 227 (1983)). Thus, there was a clear historical basis in equity for the specific relief the district court ordered. By contrast, no such basis exists here for an order requiring the Government to bring Plaintiff from El Salvador to the United States.

### C.   Ordering the Government to Return Plaintiff to the United States Would Violate Separation-of-Powers Principles.

The absence of any power under either the APA or traditional principles of equity to order the Government to retrieve a foreign national from another sovereign nation is unsurprising given the serious separation-of-powers concerns such an order would raise. To start, as explained in

Defendants' opening brief, courts have long recognized that the power to control the admission and exclusion of aliens is of a fundamentally sovereign character to be exercised by the political branches.  *See, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018); *Kiyemba*, 555 F.3d at 379; *see also* Mem. at 13–14.  Because Congress has not authorized Plaintiff's requested relief—which Plaintiff does not dispute—respect for the prerogatives of the political branches advises against finding a new "equitable" power to require the Government to bring Plaintiff from El Salvador, particularly given that we are in the midst of a global pandemic and Plaintiff was expelled pursuant to the CDC's exercise of its emergency health powers in response to that pandemic.  *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) ("[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in [these matters]." (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)).

Plaintiff downplays the import of the authorities Defendants cited in their opening brief, noting that those cases were decided in the context of an evaluation of the merits, rather than on a motion to dismiss.  *See* Opp'n at 16.  Yet, Plaintiff does not explain how that distinction is meaningful in this context.  "At every stage in litigation, a federal court must determine that i[t] has jurisdiction to hear the case before it."  *Vogel v. Go Daddy Grp., Inc.*, 266 F. Supp. 3d 234, 237 (D.D.C. 2017) (citation omitted).  Here, in order to proceed, the Court must first assure itself that Plaintiff has Article III standing, including that her alleged injury is "likely" to "be 'redressed by a favorable decision.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 50 (1992); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).  To answer that question, the Court must determine whether it is empowered to order the Government to bring Plaintiff from El Salvador, which is necessary for Plaintiff to show that her alleged injury would likely be redressed by a favorable decision.

Plaintiff also asserts that her requested remedy is not problematic because she "does not seek an order requiring that she be *admitted* to the country or given any legal status outside of the ordinary operation of the immigration laws."  Opp'n at 16.  That distinction, however, does not lessen the serious separation-of-powers concerns presented by this case.  Plaintiff is beyond the

borders of the United States in another sovereign country. As Defendants have explained, "returning" Plaintiff would require the Government to engage with the government of El Salvador to remove one of its minor citizens, which would be a serious intrusion into the Executive Branch's prerogatives, particularly in the absence of any law requiring the retrieval of non-citizens from abroad in these circumstances and at a time when the Government is taking extraordinary steps to combat the COVID-19 pandemic by temporarily limiting travel from Mexico and Canada into the United States along our shared land borders to essential travel, and by imposing other restrictions on international travel. *See* Mem. at 14.

The D.C. Circuit's decision in *Kiyemba* is again instructive. Although that case dealt in part with the "release" of noncitizens into the country, the D.C. Circuit was equally concerned with the district court's order that the Government "bring [aliens] to the United States." *Kiyemba*, 555 F.3d. at 1023; *see also id.* at 1028 ("[W]hat law authorized the district court to order the government to *bring petitioners to the United States* and release them here?" (emphasis added)); *id.* at 1028 n.13 (finding it significant that "petitioners have cited no case in which a federal court ordered the Executive to *bring an alien into the United States* and to release him here") (emphasis added). Indeed, as Defendants explained in their opening brief, that concern is even more serious here than in *Kiyemba*, because, in that case, the petitioners were already at a location where the Government exercises "*de facto* sovereignty" and would therefore not require the same engagement in discussions with another sovereign government to bring them to the United States. *See* Mem. at 14 (quoting *Boumediene v. Bush*, 553 U.S. 723, 755 (2008)).

Plaintiff tries to suggest that requiring the Government to facilitate her return from El Salvador is not extraordinary at all, but rather commonplace, pointing to U.S Immigration and Customs Enforcement ("ICE") guidelines stating that, when an alien prevails before the Supreme Court or a United States Court of Appeals on a petition for review of removal, "ICE will facilitate the alien's return to the United States" if the court's decision restores the alien to lawful permanent resident status or the alien's presence is necessary for continued administrative removal proceedings. *See* Opp'n at 12 (citing https://www.ice.gov/doclib/foia/dro_policy_memos/

11061.1_current_policy_facilitating_return.pdf).   But those guidelines make clear that the circumstances under which ICE will attempt to facilitate the return of aliens are quite narrow.  And more importantly, whether the Executive Branch will exercise its authority to return aliens to the United States, and in what circumstances, is entirely the Executive's prerogative, as discussed above.  The question before the Court is whether it is within the powers *of the judiciary* to *require* the Executive Branch to retrieve an alien from another country.  Defendants respectfully submit that it is not for all the reasons discussed above.

Nor is there any merit to Plaintiff's attempt to draw a distinction between an order requiring the Government to "return" or "retrieve" her from El Salvador and "to facilitate her ability to return," as Plaintiff claims.  Opp'n at 18.  Plaintiff does not explain how those concepts are different, and Plaintiff cannot escape the clear request for relief in her Complaint that the Government "return" her to the United States.  *See* Compl., Prayer for Relief ¶ c.

Finally, dismissing this case for lack of jurisdiction would not "amount to a blank check for lawless government conduct," as Plaintiff asserts.  Opp'n at 19.[1]  To the contrary, doing so would give effect to the fundamental principle that "the judiciary's proper role in our system of government" is subject to "the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Clapper*, 568 U.S. at 408.  Here, Plaintiff cannot establish "the irreducible constitutional minimum of standing," *Lujan*, 504 U.S. at 560, and thus cannot show that this Court has Article III jurisdiction.

---

[1] Plaintiff also reads far too much into the *Cf.* citation to Thomas Street's 1909 treatise *Federal Equity Practice* in Defendants' opening brief, which Plaintiff finds to be "[i]ncredibl[e]" at "this point in our history."  Opp'n at 19 (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)).  Defendants' point in citing to that treatise was a simple one: because Congress has not authorized the relief Plaintiff seeks in a subject-matter area that is squarely committed to the political branches, separation-of-powers concerns weigh heavily against the exercise of any purported equitable power to require the Government to return Plaintiff to the United States.  *See* Mem. at 13.

II.    **EVEN IF THIS COURT HAS THE POWER TO PROVIDE PLAINTIFF'S REQUESTED RELIEF, THE COURT SHOULD REFRAIN FROM ORDERING THE GOVERNMENT TO BRING PLAINTIFF TO THE UNITED STATES**

Even if the Court were to conclude that either the APA or traditional equity principles do somehow authorize Plaintiff's requested relief, Defendants respectfully submit that the Court should exercise its discretion to decline to require it here.

As Defendants have discussed, by giving Plaintiff her requested relief, the Court would necessarily be requiring the Government to engage in discussions with another sovereign government, which strongly counsels against an exercise of judicial power.  *See* Mem. at 14. Doing so would be particularly dubious in light of the ongoing and unprecedented COVID-19 pandemic, which has prompted the President to declare a National Emergency and has required the Government to undertake massive efforts, including ongoing discussions with its neighboring countries, to attempt to slow the spread of infection.  Indeed, the CDC Order pursuant to which Plaintiff was returned to her home country was part of the Government's response to the public health crisis.  These extraordinary circumstances alone justify declining to order the Government to return Plaintiff to the United States.

Even if that were not enough, the broader ramifications of requiring the Government to return Plaintiff to the United States may be serious.  By Plaintiff's own account, there were approximately 1,000 minors returned to their home countries pursuant to the CDC Order in the first two months of the pandemic.  *See* Compl. ¶ 71.  Many more have been returned by now. Contrary to Plaintiff's suggestion that they would not be similarly situated to Plaintiff, *see* Opp'n at 23, they likely were attempting to seek some form of immigration relief from being removed because aliens covered by the CDC Orders are by definition without valid travel documents.  If the Court orders Plaintiff's return, the thousands of aliens already returned may seek the same relief, creating an unworkable burden on the Government in the midst of the COVID-19 pandemic.

III.   **WITHOUT AN ORDER REQUIRING THE GOVERNMENT TO RETURN PLAINTIFF TO THE UNITED STATES, PLAINTIFF'S OTHER REQUESTED RELIEF WOULD NOT REDRESS HER ALLEGED INJURIES.**

If the Court concludes, as it should, that it would be inappropriate to order the Government to "return" Plaintiff to the United States from El Salvador, then it should dismiss this case for lack of jurisdiction because it means that the Court would be unable to remedy Plaintiff's alleged injuries, even if it were to grant Plaintiff's other remaining requests for relief. *See* Mem. at 16–17.

Plaintiff disagrees and claims that declaring the CDC Order to be invalid would sufficiently remedy her alleged injury, because doing so is a necessary "first step" towards meaningful relief. Opp'n at 24 (quoting *Am. Petroleum Tankers Parent, LLC v. United States*, 943 F. Supp. 2d 59, 66 (D.D.C. 2013)). Plaintiff's argument is unavailing, however, because it is entirely speculative whether—in the absence of an order requiring the Government to return Plaintiff to the United States—declaring the CDC Order unlawful as applied to Plaintiff, or enjoining Defendants from applying it to her would ever have any actual, concrete effect, which is a prerequisite for Article III standing. *See Lujan*, 504 U.S. 555, 574 (1992).

Plaintiff's only response is to point to the allegation in her Complaint that she "is prepared to return to [the United States] if she were given the opportunity." Compl. ¶ 86; s*ee also* Opp'n at 25. That allegation, however, must be read in context with Plaintiff's requested relief, which is that the Court "[e]nter an order providing relief for [Plaintiff] by ordering that Defendants return her for reprocessing of her application for admission . . . ." Compl., Prayer for Relief ¶ c. Although Plaintiff also vaguely asserts in her brief that she "stands ready to travel back to the United States on her own," Opp'n at 24, whether Plaintiff will, in fact, present herself for processing, absent the Government's assistance, is purely speculative. *Cf. Lujan*, 504 U.S. at 564 ("[T]he affiants' profession of an 'inten[t]' to return to the places they have visited before . . . is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Under these circumstances, Plaintiff cannot establish

12

that there would be any concrete effect resulting from an order granting Plaintiff's other requested relief. And the Court should not decide the legality of the CDC Order "advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also* Mem. at 16–17.

## CONCLUSION

For the foregoing reasons, and for the reasons explained in their opening brief, Defendants respectfully ask that the Court grant their cross-motion to dismiss or, in the alternative, for summary judgment.

Dated: September 3, 2020     Respectfully submitted,

            ETHAN P. DAVIS
            Acting Assistant Attorney General

            DAVID M. MORRELL
            Deputy Assistant Attorney General

            JEAN LIN
            Special Litigation Counsel

            */s/ Kevin Snell*
            KEVIN SNELL (NY Bar)
            BRADLEY CRAIGMYLE
            Trial Attorneys
            Federal Programs Branch
            Civil Division, U.S. Department of Justice
            1100 L Street, N.W.
            Washington, D.C. 20005
            (202) 305-0924
            Kevin.Snell@usdoj.gov

            *Attorneys for Defendants*