UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| G.Y.J.P., A MINOR CHILD, by and through her mother and Next Friend, M.R.P.S., <br><br> Plaintiff, <br><br> v. <br><br> CHAD F. WOLF, Acting Secretary of Homeland Security, in his official capacity, et al., <br><br> Defendants. | Case No. 1:20-cv-01511 (TNM) |

**MEMORANDUM ORDER**

G.Y.J.P., a 13-year-old unaccompanied migrant from El Salvador, alleges that she was unlawfully expelled from this country based on a COVID-19-related policy that bypasses the regular procedural protections for immigrant children and asylum seekers. The Government moves to dismiss, claiming that G.Y.J.P. lacks standing because this Court cannot redress her injury as it cannot order the relief that she seeks. But the Government fixates on just one possible remedy. After reviewing G.Y.J.P.'s claims, the Court is confident that there is at least some form of relief that it could order if it determines that G.Y.J.P. has prevailed on her claims. The Court will thus deny the motion.

**I.**

Plaintiff G.Y.J.P. is a 13-year-old girl in El Salvador. Compl. ¶ 76, ECF No. 3. Her mother is a former police officer who settled in the United States after fleeing gang violence in

her home country.[1]  *Id.* ¶ 77.  An immigration judge granted G.Y.J.P.'s mother withholding of removal in 2018, permitting her to stay in the United States at least temporarily.  *Id.*  Facing similar threats of violence, G.Y.J.P. ventured to the United States on her own.  *Id.* ¶¶ 78–80.  U.S. Customs and Border Protection ("CBP") agents apprehended her in April 2020 as she crossed the U.S.-Mexico border.  *Id.* ¶ 80.  G.Y.J.P. told immigration authorities about her mother residing in the country and the dangers that she faced back home.  *Id.* ¶ 81.  She stayed in CBP custody for about a week before the Government flew her to El Salvador, where she remains today.  *Id.* ¶¶ 83–86.

The Government expelled G.Y.J.P. in accordance with new set of policies enacted in response to the COVID-19 pandemic.  *Id.* ¶¶ 46–51.  In March 2020, the U.S. Centers for Disease Control and Prevention ("CDC") issued an interim final rule to provide "a procedure for CDC to suspend the introduction of persons from designated countries or places" for public health purposes.[2]  The agency issued the regulation under Sections 362 and 365 of the Public Health Service Act of 1944, 42 U.S.C. §§ 265, 268.  Section 362 provides that the CDC may "prohibit . . . the introduction of persons and property from such countries" or designated places whenever "by reason of the existence of any communicable disease in a foreign country there is serious danger of the introduction of such disease into the United States."[3]  Citing the regulation,

---

[1]  In assessing this motion to dismiss under Rule 12(b)(1), the Court must assume the truth of all the factual allegations in the Complaint.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

[2]  Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16559 (Mar. 24, 2020).

[3]  Although the statute refers to the U.S. Surgeon General and the President, these powers now lie with the CDC after several intra-executive branch delegations.  *See* Compl. ¶ 48 and n.2.

the CDC Director issued an order temporarily suspending the introduction of certain "covered aliens" from entering the United States through Canada or Mexico and directing their return to the country from which they entered, their home country, or another location.[4]  The order and later orders extending the policy do not mention individuals seeking asylum, withholding of removal, or protection under the Convention Against Torture.[5]  CBP has enforced the order to remove aliens like G.Y.J.P. despite various procedures and protections that they would normally receive upon arriving at the border.  *See* Compl. ¶¶ 28–40; Def.'s Mot. to Dismiss for Lack of Jurisdiction at 13–14; ECF No. 38.[6]

      G.Y.J.P. challenges what she calls the "Title 42 process" by which she was expelled.  *See* Compl. ¶ 1.  She contends that her expulsion resulted from ultra vires action, as well as violated various immigration statutes and the Administrative Procedure Act ("APA").  *Id.* ¶¶ 105–144.  Her Complaint seeks several forms of relief, asking the Court to: (1) "Declare unlawful the Title 42 Process as applied to" her; (2) vacate her expulsion and enjoin the Government from applying the Title 42 Process to her; and (3) order the Government to "return her for reprocessing of her application for admission" to the country and afford her the normal procedures and protections granted to applicants in her position.  *Id.* at 28.

---

[4] Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17060, 17067 (Mar. 26, 2020) (effective date Mar. 20, 2020).

[5] *See id.*; Extension of Order Under Sections 362 and 365 of the Public Health Service Act; Order Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 22424-01 (Apr. 22, 2020) (effective date Apr. 20, 2020); Amendment and Extension of Order Under Sections 362 and 365 of the Public Health Service Act; Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 31503-02 (May 26, 2020) (effective date May 21, 2020).

[6] All page citations refer to the page numbers that the CM/ECF system generates.

The Government moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for a lack of Article III standing because "the Court has no authority to grant the extraordinary relief that [G.Y.J.P.] seeks." Mot. at 9. The parties fully briefed the matter, and it is now ripe.

## II.

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish by a preponderance of the evidence the predicates to jurisdiction, including "the irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing requires that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Traceability does not make redressability inevitable, because "a new status quo may be held in place" by forces other than the actions of a defendant. *Competitive Enter. Inst. v. Fed. Commc'ns Comm'n*, 970 F.3d 372, 385 (D.C. Cir. 2020) (cleaned up). The plaintiff "bears the burden of establishing standing as of the time [she] brought [the] lawsuit and maintaining it" throughout the case. *Carney v. Adams*, No. 19-309, 2020 WL 7250101, at *4 (U.S. Dec. 10, 2020).

When ruling on a motion to dismiss for lack of jurisdiction, a court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). But the factual allegations receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015).

### III.

The Government attacks only one prong of standing: redressability. Citing G.Y.J.P.'s request that this Court "order" the Government to "return her [from El Salvador] for reprocessing of her application for admission" to the United States, the Government insists that such an order is unavailable under the APA and is beyond the scope of this Court's equitable powers. Mot. at 17–21. The Government also contends that commanding it to "engage a foreign government to retrieve one of that country's citizens" would intrude upon the Executive's plenary power over diplomatic relations and violate separation-of-powers principles. *Id.* at 22. But this is the only form of relief that would meaningfully redress G.Y.J.P.'s alleged injuries, the Government claims, so the Court must dismiss the case. *Id.* at 24–26.

In response, G.Y.J.P. points to several cases in which courts have ordered similar forms of relief. *See, e.g.*, *Grace v. Whitaker*, 344 F. Supp. 3d 96, 105 (D.D.C. 2018) ("order[ing] the government to return to the United States the plaintiffs who were unlawfully deported"), *aff'd in part, rev'd in part, and remanded sub nom. Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020); *J.L. v. Cuccinelli*, No. 18-CV-04914-NC, 2020 WL 2562895, at *3 (N.D. Cal. Feb. 20, 2020) (ordering government to "facilitate [plaintiffs'] return to the United States to the extent they wish to be returned"). She also contends that injunctive relief is available under the APA, and she highlights that there are remedies short of an order requiring her return that would grant her relief. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss for Lack of Jurisdiction ("Opp'n") at 28–35, ECF No. 40.

For starters, expansive though they may be, judicial equitable powers are not limitless. Courts have long recognized that the Executive and Legislature generally manage the admission and exclusion of aliens, *see*, *e.g.*, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), but matters involving

5

foreign relations are even more resolutely reserved for the political branches. *See Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020). Decisions over when and how to engage in diplomatic negotiations "are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.* (cleaned up). So the Court doubts the propriety of its ordering the Government to negotiate with another sovereign for G.Y.J.P.'s return, even if that were the only way she might achieve full relief. The district court decisions in *Grace* and *J.L.* are not binding precedent. More, their persuasive force is questionable given that they do not grapple with the institutional capacity and separation-of-powers concerns raised here.

But the Court need not wade far into this debate—at least today. Although G.Y.J.P. bears the burden to establish jurisdiction, the Court should not dismiss the matter on redressability grounds if there is at least one form of meaningful relief that it could award. *See Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985). The Government latches onto the most extreme remedy that G.Y.J.P. requests, but it ignores lesser forms of relief that the Court could unquestionably provide. After all, "plaintiffs frequently ask for the stars, and a complaint is not dismissable simply because its proof would at most entitle the plaintiff to something less." *Id.* at 1104 n.11 (quotation omitted).

Aside from an order requiring the Government to facilitate G.Y.J.P.'s return, the Complaint asks the Court to declare unlawful the Title 42 Process as applied to her and enjoin the Government from applying it to her in future proceedings. Compl. at 30. The Government does not dispute that the Court could grant this form of relief, and rightfully so. *See* 5 U.S.C. § 703 (providing for "writs of prohibitory or mandatory injunction" against agency action). Securing this remedy would permit G.Y.J.P. to present herself to immigration authorities at a

port of entry and seek processing under the normal framework of the immigration laws, while receiving the procedural protections that she alleges would normally apply.

The Government claims that G.Y.J.P.'s return to this country for reprocessing, absent Government facilitation, is too speculative, and it suggests that ordering the Government to do so would be necessary for resolution of this case to have any "actual, concrete effect."  Defs.' Reply in Support of Defs.' Mot. to Dismiss for Lack of Jurisdiction ("Reply") at 17, ECF No. 43.  Even if the Government is correct, a plaintiff satisfies the redressability requirement so long as the relief sought would constitute a "necessary first step on a path that could ultimately lead to relief fully redressing the injury."  *Power Co. of Am., L.P. v. F.E.R.C.*, 245 F.3d 839, 842 (D.C. Cir. 2001) (cleaned up).  Enjoining the Government from applying the Title 42 Process to G.Y.J.P. again would be a necessary step for G.Y.J.P. to secure all the relief that she seeks.  More, this is not a situation where it is purely speculative that a plaintiff will come to this country absent Government facilitation; she has already come here once unassisted.

More still, the Court credits—as it must at this stage—the Complaint's statement that G.Y.J.P. "seeks to return to the United States . . . and is prepared to return to the country to seek asylum if she were given the opportunity."  Compl. ¶ 86.  This case is unlike those cited by the Government where ultimate relief depended on the actions of third parties outside the control of the parties or the Court.  *See, e.g.*, *Garcia v. USCIS*, 168 F. Supp. 3d 50, 66 (D.D.C. 2016) (relief too speculative where reliant on unlikely waiver of deportation from immigration judge and plaintiff did "not establish[] any reason to believe he would be successful in obtaining the

waiver."). The Court is satisfied at this stage that it could fashion meaningful relief for G.Y.J.P. if she prevails on her claims, and it need not decide now what would be acceptable.[7]

## IV.

For these reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss for Lack of Jurisdiction is DENIED.

**SO ORDERED**.

Dated: December 11, 2020         TREVOR N. McFADDEN, U.S.D.J.

---

[7] As part of her alleged injury, G.Y.J.P. contends that the Government withheld procedural protections that she was entitled to under various immigration statutes. *See* Compl. ¶¶ 105–144. The requirements for standing differ slightly where procedural rights—rather than substantive rights—are at issue. *See Lujan*, 504 U.S. at 572 n.7; *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) (explaining that once a plaintiff establishes that an agency action affects a concrete interest, "the normal standards for immediacy and redressability are relaxed"). The Court need not determine whether and how this standard applies to G.Y.J.P.'s claims because neither party raises it and the Court determines that she meets the normal, higher burden for redressability.